E-FILINGADR

1   BARRACK, RODOS & BACINE
    STEPHEN R. BASSER (121590)
2   sbasser@barrack.com
    JOHN L. HAEUSSLER (215044)
3   jhaeussler@barrack.com
    402 West Broadway, Suite 850
4   San Diego, CA 92101
    Telephone:   (619) 230-0800
5   Facsimile:   (619) 230-1874

6   Attorneys for Plaintiff, Port Authority of Allegheny County Retirement and Disability
    Allowance Plan For Employees Represented by Local 85 of the Amalgamated Transit Union
7

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  PORT AUTHORITY OF ALLEGHENY      )   Case No.:
    COUNTY    RETIREMENT    AND      )
12  DISABILITY ALLOWANCE PLAN FOR    )   C 06 - 04510 PJH
    EMPLOYEES      REPRESENTED   BY  )
13  LOCAL 85 OF THE AMALGAMATED      )   PLAINTIFF'S VERIFIED
    TRANSIT UNION, Derivatively on Behalf )   SHAREHOLDER DERIVATIVE
14  of    Nominal    Defendant    APPLE )   COMPLAINT
    COMPUTER, INC.,                  )
15                                   )
                      Plaintiff,     )
16                                   )
17           vs.                     )
                                     )
18  STEVEN   P.   JOBS,   MICHAEL  H. )
    SPINDLER, IAN DIERY, JAMES   J.  )
19  BUCKLEY, DANIEL L. EILERS,   G.  )
    FREDERICK  FORSYTH,  FRED   D.   )
20  ANDERSON, GUERRINO DE LUCA,      )
    JONATHAN  RUBINSTEIN,  ROBERT    )
21  CALDERONI, MITCHELL MANDICH,     )
    TIMOTHY D. COOK, RONALD  B.      )
22  JOHNSON, AVADIS TEVANIAN, JR.,   )
    JEROME  B.  YORK,  WILLIAM  V.   )
23  CAMPBELL, ARTHUR D. LEVINSON,    )
    and MILLARD DREXLER              )
24                                   )
                      Defendants,    )
25                                   )
                      and            )
26                                   )
    APPLE COMPUTER,                  )   JURY TRIAL DEMANDED
27                                   )
                      Nominal Defendant. )
28                                   )

PL.'S VERIFIED S'HOLDER DERIVATIVE COMPLAINT

I.   **NATURE OF THE ACTION**

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Apple Computer, Inc. ("Apple" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      The action stems from a widening scandal involving more than 80 investigations being conducted by the United States Securities and Exchange Commission ("SEC") and/or the United States Department of Justice into the evident back-dating of stock option grants to corporate executives.  The investigation relating to Apple involves grants of stock options to corporate executives during the years 1993 through 2001, as more fully detailed below, which caused Apple to file materially false and misleading statements with the SEC between 1993 and 2005.  While the Company's proxy statements filed with the SEC stated that the options granted by Apple carried with them an exercise price that was not less than the fair market value of Apple stock on the date of grant and issuance, in truth, the grants were **back-dated** to dates when Apple's stock was trading at lows during the relevant periods.  In gross breach of their fiduciary duties as officers and/or directors of Apple, the Individual Defendants (as defined herein) colluded with one another to:

  a.   improperly backdate dozens of grants to Apple stock options to Apple Chief Executive Officer Steven P. Jobs and thirteen other Apple executives, in violation of the Company's shareholder-approved stock option plans;

  b.   improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles ("GAAP");

1

c.   improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code; and

d.   produce and disseminate to Apple shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.   As a result of the Individual Defendants' egregious misconduct, Apple has sustained millions of dollars in damages, and Jobs and other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## II.   JURISDICTION AND VENUE

4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.   This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 (a).   This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.   Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.   One of more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

III.   **PARTIES**

    A.   **Plaintiff**

    6.   Plaintiff, Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union is, and was at all relevant times, a shareholder of nominal defendant Apple.

    B.   **Defendants**

    7.   Nominal defendant Apple is a California corporation with its principal executive offices located at 1 Infinite Loop, Cupertino, California 95014.  According to its public filings, Apple and its subsidiaries design, manufacture, and market personal computers and related software, services, peripherals, and networking solutions.  The Company also designs, develops, and markets a line of portable digital music players along with related accessories and services including the online distribution of third-party music, audio books, music videos, short films, and television shows.

    8.   Defendant Steven P. Jobs ("Jobs") has served as the Company's Chief Executive Officer since 2000, and served as Interim Chief Executive Officer from 1997-2000.  Jobs also served in various capacities since he co-founded the Company in 1976 to 1985.  Jobs has also served as a director since August 1997.  Upon information and belief, Jobs is a citizen of the State of California.

    9.   Defendant Michael H. Spindler ("Spindler") served as the Company's Chief Executive Officer from June 1993 to February 1996, and as President from November 1990 to February 1996.  Spindler also served as the Company's Chief Operating Officer and Executive Vice President from January 1990 to June 1993, as Senior Vice President from February 1989 to January 1990, as President, Apple Europe from August 1988 to in or about January 1990, as Senior Vice President, Apple Europe Division from April 1988 to August 1998, as Senior Vice

3

President, International from January 1988 to April 1998, as Senior Vice President, International Sales and Marketing from November 1986 to January 1988, as Vice President, International from February 1985 to November 1986, as Vice President and General Manager, Europe from January 1984 to February 1985, and as European Marketing Manager from September 1980 to January 1984. Spindler also served as a member of the Company's Board of Directors from January 1991 to February 1996. Upon information and belief, Spindler is a citizen of the State of California.

10.     Defendant Ian Diery ("Diery") served as the Company's Executive Vice President and General Manager, Computer Division from July 1993 to April 1995. Diery also served as Executive Vice President, Worldwide Sales and Marketing from July 1992 to July 1993, and as Senior Vice President of Apple and President, Apple Pacific Division from October 1989 to July 1992. Upon information and belief, Diery is a citizen of the State of California.

11.     Defendant James J. Buckley ("Buckley") served as the Company's Senior Vice President and President, Apple USA from January 1994 to May 1996. Buckley also served as the Company's Vice President and General Manager, Higher Education Division form April 1992 to January 1994, as Vice President, Northern Operations from May 1991 to April 1992, Vice President, Central Operations from April 1988 to May 1991, as Area Director, North Central Area from May 1986 to April 1988, as Director of K-12 and Higher Education Sales from January 1986 to May 1986, and as K-12 and Higher Education Sales Manager from May 1985 to January 1986. Upon information and belief, Buckley is a citizen of the State of California.

12.     Defendant Daniel L. Eilers ("Eilers") served as the Company's Senior Vice President, Worldwide Marketing and Customer Solutions from March 1991 to December 1995.

Eilers also served as the Company's Vice President, Strategy and Corporate Development from 1989 to March 1991, as Vice President, Strategic Investments from November 1987 to 1989, as Director of Strategic Investments from 1986 to November 1987, as Assistant Treasurer from 1984 to 1986, and as a software product manager from June 1982 to 1984.  Upon information and belief, Eilers is a citizen of the State of California.

13.     Defendant G. Frederick Forsyth ("Forsyth") served as the Company's Senior Vice President, Worldwide Operations from June 1993 to February 1998.  Forsyth also served as the Company's Senior Vice President and General Manager, Macintosh Systems Division from April 1991 to June 1993, as Senior Vice President, Worldwide Manufacturing from November 1990 to April 1991, and as Vice President, Worldwide Manufacturing, Apple Products Division from June 1989 to November 1990.  Upon information and belief, Forsyth is a citizen of the State of California.

14.     Defendant Fred D. Anderson ("Anderson") served as the Company's Executive Vice President and Chief Financial Officer from April 1996 to June 2004.  Anderson has also served as a director since June 2004.  Upon information and belief, Anderson is a citizen of the State of California.

15.     Defendant Guerrino De Luca ("De Luca") served as the Company's Senior Vice President from 1996 to October 1997.  De Luca also served in various capacities with the Company since 1989, including President of Claris Corporation, Apple's subsidiary, from 1995 to 1996, Vice President of Marketing and Sales for the Company's software division in 1994, Vice President and General Manager of the Personal Interactive Electronics Group for Apple Europe in 1993, and Vice President, Marketing, for Apple Europe in 1992.  Upon information and belief, De Luca is a citizen of the State of California.

16.     Defendant Jonathan Rubinstein ("Rubinstein") served as the Company's Senior Vice President, iPod Division from May 2004 to March 2006.  Rubinstein also served as the Company's Senior Vice President, Hardware Engineering from February 1997 to May 2004. Upon information and belief, Rubinstein is a citizen of the State of California.

17.     Defendant Robert Calderoni ("Calderoni") served as the Company's Senior Vice President of Finance from June 1996 to November 1997.   Upon information and belief, Calderoni is a citizen of the State of California.

18.     Defendant Mitchell Mandich ("Mandich") served as the Company's Senior Vice President, Worldwide Sales from at least December 1997 to October 2000.  Mandich also served as the Company's Vice President, North American Business Division from February 1997 to, at the latest, December 1997.  Upon information and belief, Mandich is a citizen of the State of California.

19.     Defendant Timothy D. Cook ("Cook") has served as the Company's Chief Operating Officer since October 2005.  Cook also served as the company's Executive Vice President, Worldwide Sales and Operations from January 2002 to October 2005, and as Senior Vice President, Worldwide Operations from February 1998 to January 2002.  Upon information and belief, Cook is a citizen of the State of California.

20.     Defendant Ronald B. Johnson ("Johnson") has served as the Company's Senior Vice President, Retail since at least September 2001.  Johnson also served as the Company's Senior Vice President, New Business Development from January 2000 until, at the latest, September 2001.  Upon information and belief, Johnson is a citizen of the State of California.

21.     Defendant Avadis Tevanian, Jr. ("Tevanian") served as the company's Seniro Vice President, Chief Software Technology Officer from July 2003 to March 2006.  Tevanian

6

also served as the Company's Senior Vice President, Software Engineering from February 1997 to July 2003.  Upon information and belief, Tevanian is a citizen of the State of California.

22.     Collectively, defendants Jobs, Spindler, Diery, Buckley, Eilers, Forsyth, Anderson, De Luca, Rubinstein, Calderoni, Mandich, Cook, Johnson and Tevanian are referred to herein as the "Officer Defendants."

23.     Defendant William V. Campbell ("Campbell") has served as a director of Apple since August 1997.  Campbell has also served as a member of the Audit and Finance Committee of the Board of Directors ("Audit Committee") since August 1997 and as a member of the Compensation Committee of the Board of Directors ("Compensation Committee") since August 2001.  Campbell was also a member of the Board of Directors from April 2000 to August 2001, when the Board administered the company's executive compensation program.   Upon information and belief, Campbell is a citizen of the State of California.

24.     Defendant Arthur D. Levinson ("Levinson") has served as a director of Apple since 2000.  Levinson has also served as a member of the Audit Committee since fiscal 2000, and as a member of the Compensation Committee August 2001 to fiscal 2003.  Levinson was also a member of the Board of Directors from April 2000 to August 2001, when the Board administered the Company's executive compensation program.  Upon information and belief, Levinson is a citizen of the State of California.

25.     Defendant Jerome B. York ("York") has served as a director of Apple since August 1997.  York has also served as a member of the Audit Committee since August 1997, and as a member of the Compensation Committee August 2001 to in or about fiscal 2002.  York was also a member of the Board of Directors from April 2000 to August 2001, when the Board administered the Company's executive compensation program.  Upon information and belief, York is a citizen of the State of California.

PL.'S VERIFIED S'HOLDER DERIVATIVE COMPLAINT

26.     Collectively, defendants Campbell, Levinson and York are referred to herein as the "Audit Committee Defendants."

27.     Defendant Millard Drexler ("Drexler") ahs served as a director of Apple since 1999. Drexler has also served as a member of the Compensation Committee since fiscal 2002, and was a member of the Board of Directors from April 2000 to August 2001, when the Board administered the Company's executive compensation program.

28.     Collectively, defendants Campbell, Drexler, Levinson and York are referred to herein as the "Compensation Committee Defendants."

29.     Collectively, the Officer Defendants, Compensation Committee Defendants, and Audit Committee Defendants are referred to herein s the "Individual Defendants."

**C.     Duties of the Individual Defendants**

30.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

31.     The Individual Defendants, because of their position of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

32.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

        a.     exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

        b.     exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

        c.     exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

        d.     exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

        e.     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

33.     The Individual Defendants were responsible for maintaining and establishing adequate internal controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

9

     (1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

     (2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

          (a)    transactions are executed in accordance with management's general or specific authorization;

          (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP.

34.    Apple's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

     a.    Reviewing with Management and the independent auditor:

          The Corporation's annual audited financial statements, and related footnotes, and quarterly unaudited financial statements, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Corporation's Annual;

          Report on Form 10-K and Quarterly Reports on Form 10-Q respectively, with the SEC;

          The independent auditors' audit of the annual financial statements to interim periods;

          The accompanying Management Letter and any reports with respect to interim periods;

     b.    Discussing with the independent auditors the financial statements and audit findings, including any significant adjustments, Management judgments and accounting estimates, significant new accounting policies and disagreements with Management and any other matters described in SAS No. 61, as may be modified or supplemented; and

     c.    Inquiring about the application of the Corporation's accounting policies and its consistency from period to period, and the compatibility of these accounting policies with Generally Accepted Accounting Principles, and, when applicable, the provisions for future occurrences that may have a material impact on the financial statements of the Corporation.

## IV.     FACTUAL ALLEGATIONS

### A.     Stock Option Grants to the Officer Defendants

35.     At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Apple and administered the Company's stock option plans.

36.     From 1993 to 2001, the Compensation Committee granted certain Apple stock options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant[1] | Exercise Price[2] | Number of Options |
|---|---|---|---|
| Jobs | 1/12/00 | $43.5938 | 20,000,000 |
| | 10/19/01 | $18.30 | 7,500,000 |
| Anderson | 4/1/96 | $24.56 | 400,000 |
| | 7/11/97 | $13.25 | 500,000 |
| | 8/5/97 | $19.75 | 250,000 |
| | 12/19/97 | $13.6875 | 250,000 |
| | 3/2/99 | $34.625 | 475,000 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Diery | 10/12/93 | $23.75 | 40,000 |
| | 12/20/93 | $29.50 | 90,000 |
| Buckley | 10/12/93 | $23.75 | 15,000 |
| | 12/20/93 | $29.50 | 30,000 |
| | 1/26/94 | $33.875 | 20,000 |
| | 4/27/95 | $38.25 | 200,000 |
| Spindler | 10/13/93 | $24.00 | 200,000 |
| Eilers | 10/3/94 | $33.69 | 200,000 |
| | 4/27/95 | $38.25 | 60,000 |
| Forsyth | 4/27/95 | $38.25 | 40,000 |
| De Luca | 7/11/97 | $13.25 | 309,750 |

---

[1]     Options granted on July 11, 1997 and December 19, 1997 were granted pursuant to the Company's Exchange Program.

[2]     Share prices reflect the Company's 2-for-1 stock split in June 2000.

11

| | | | |
|---|---|---|---|
| | 8/5/97 | $19.75 | 190,250 |
| Rubinstein | 7/11/97 | $13.25 | 200,000 |
| | 8/5/97 | $19.75 | 300,000 |
| | 12/19/97 | $13.6875 | 300,000 |
| | 3/2/99 | $34.625 | 458,334 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Calderoni | 8/5/97 | $19.75 | 80,000 |
| Mandich | 12/19/97 | $13.6875 | 224,250 |
| | 12/29/97 | $13.125 | 200,000 |
| | 3/2/99 | $34.625 | 387,876 |
| Cook | 2/2/98 | $17.6875 | 700,000 |
| | 3/2/99 | $34.625 | 300,000 |
| | 1/17/01 | $16.8125 | 1,000,000 |
| Johnson | 12/14/99 | $47.4375 | 1,200,000 |
| Tevanian | 1/17/01 | $16.8125 | 1,000,000 |

37.     Pursuant to the terms of the Company's shareholder-approved stock option plans, before fiscal 1998, the exercise price of the options must be no less than the closing price of Apple stock on the business day immediately preceding the date grant.  After fiscal 1998, the exercise price of options must be no less than the closing price of Apple stock on the date of grant.

38.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

39.     Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation is excess of $1 m million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if:  (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of

12

1   two or more outside directors, (iii) the material terms under which the compensation is to be

2   paid, including the performance goals, are disclosed to shareholders and approved by a majority

3   of the vote in a separate shareholder vote before the payment of the compensation, and (iv)

4

5   before any payment of such compensation, the compensation committee certifies that the

6   performance goals and any other material terms were in fact satisfied.

7        40.    In a striking pattern that could not have been the result of chance, each and every

8   one of the foregoing stock option grants was dated just after a sharp drop and just before a

9   substantial rise in Apple's stock price, as demonstrated in the following chart:

10     **Summary of Option Grants and Surrounding Stock Price Performance**[3]

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/12/93 | $23.75 | $24.75 | $29.75 | 25.3% |
| 10/13/93 | $24.00 | $23.87 | $31.75 | 32.3% |
| 12/20/93 | $29.50 | $32.25 | $31.50 | 6.8% |
| 1/26/94 | $33.875 | $30.50 | $36.25 | 7.0% |
| 10/3/94 | $33.69 | $35.50 | $39.75 | 18.0% |
| 4/27/95 | $38.25 | $39.00 | $41.00 | 7.2% |
| 4/1/96 | $24.56 | $26.12 | $25.87 | 5.3% |
| 7/11/97 | $13.25 | $14.69 | $16.25 | 21.9% |
| 8/5/97 | $19.75 | $16.56 | $24.44 | 23.7% |
| 12/19/97 | $13.6875 | $15.81 | $18.94 | 38.4% |
| 12/29/97 | $13.125 | $14.13 | $19.50 | 48.6% |
| 2/2/98 | $17.6875 | $18.81 | $19.62 | 10.9% |
| 3/2/99 | $34.625 | $38.31 | $35.50 | 2.5% |
| 12/14/99 | $47.4375 | $48.935 | $50.345 | 6.1% |
| 1/12/00 | $43.5938 | $50.345 | $55.00 | 26.2% |
| 1/17/01 | $16.8125 | $14.88 | $21.62 | 28.6% |
| 10/19/01 | $18.30 | $16.14 | $18.57 | 1.5% |

24       41.    The reason for the extraordinary pattern set froth in the preceding paragraph is

25   that the purported grant dates set forth therein were not the actual dates on which the stock

26   option grants were made.   Rather, at the behest of the Officer Defendants, the Committee

27

28

---

[3]     Share prices adjusted to reflect the Company's 2-for-1 stock split in June 2000.

1   Defendants improperly backdated the stock option grants to make it appear as though the grants

2   were made on dates when the market price of Apple stock was lower than the market price on

3   the actual grant dates.  This improper backdating, which violated the terms of the Company's

4   shareholder-approved stock option plans, resulted in option grants with lower exercise prices,

5   which improperly increased the value of the options to the Officer Defendants and improperly

6   reduced the amounts the Officer Defendants had to pay the Company upon exercise of the

7

8   options.

9   **B.      Dissemination of False Financial Statements**

10      42.      The backdating also resulted in Apple filing materially false and misleading

11  statements with the SEC.  As a result of the improper backdating of stock options, the

12  Company, with the knowledge, approval, and participation of each of the Individual

13  Defendants,

14

15              a.      violated the terms of the Company's shareholder-approved stock option
                        plans;

16

17              b.      violated GAAP by failing to recognize compensation expenses incurred
                        when the improperly backdated options were granted;

18

19              c.      violated Section 162(m) by taking tax deductions based on stock option
                        grants that were not payable solely on account of the attainment of one or
20                      more performance goals and violated the terms of the Company's
                        shareholder-approved stock option plans; and

21

22              d.      produced and disseminated to Apple shareholders and the market false
                        financial statements that improperly recorded and accounted for the
23                      backdated option grants.

24      43.      The Company, with the knowledge, approval, and participation of each of the

25  Individual Defendants, disseminated its false financial statements in, *inter alia*, the following

26  Form 10-K filings:

27              a.      Form 10-K for the year ended September 30, 1994, filed with the SEC on
                        December 13, 1994 and signed by defendant Spindler;
28

14

b.     Form 10-K for the year ended September 29, 1995, filed with the SEC on December 19, 1995 and signed by defendant Spindler;

c.     Form 10-K for the year ended September 27, 1996, filed with the SEC on December 19, 1996 and signed by defendant Anderson;

d.     Form 10-K for the year ended September 26, 1997, filed with the SEC on December 5, 1997 and signed by defendants Jobs, Anderson, Campbell, and York;

e.     Form 10-K405 for the year ended September 25, 1998, filed with the SEC on December 23, 2998 and signed by defendants Anderson, Campbell, and York;

f.     Form 10-K for the year ended September 25, 1999, filed with the SEC on December 22, 1999 and signed by defendants Anderson, Jobs, Campbell, Drexler, Levinson, and York;

g.     Form 10-K405 for the year ended September 30, 2000, filed with the SEC on December 14, 2000 and signed by defendants Anderson, Jobs, Campbell, Drexler, Levinson, and York;

h.     Form 10-K405 for the year ended September 29, 2001, filed with the SEC on December 21, 2000 and signed by defendants Anderson, Jobs, Campbell, Drexler, Levinson, and York; and

i.     Form 10-K for the year ended September 28, 2002, filed with the SEC on December 19, 2002 and signed by defendants Anderson, Jobs, Campbell, Drexler, Levinson, and York.

44.     Furthermore, from 1993 to 2001, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

a.     Disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

b.     Filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

45.     On March 18, 2006, *The Wall Street Journal* published an article under the headline "The Perfect Payday" that described similar stock option backdating practices by other

companies, including Affiliated Computer Services, Inc. ("ACS"), Comverse Technology, Inc. ("Comverse"), and Vitesse Semiconductor Corporation ("Vitesse").

46.     The odds that the pattern of fortuitously-timed stock option grants exhibited by Apple is the result of chance are similar to, if not greater than, the one in several billion or more odds described by *The Wall Street Journal*.  The actual reason for the extraordinary pattern exhibited by Apple was that the Officer Defendants' stock options were improperly backdated, as alleged herein.

47.     On June 29, 2006, Apple announced that an internal investigation had discovered irregularities related to the issuance of certain stock option grants made between 1997 and 2001. Specifically, the Company stated:

> Apple today announced that an internal investigation has discovered irregularities related to the issuance of certain stock option grants made between 1997 and 2001.  One of the grants in question was to CEO Steve Jobs, but it was subsequently cancelled and resulted in no financial gain to the CEO.  A special committee of Apple's outside directors has hired independent counsel to perform an investigation and the company has informed the SEC.  Apple executives will refrain from commenting further on this matter until the independent investigation in concluded.

> "Apple is a quality company, and we are proactively and transparently disclosing what we have discovered to the SEC," said Apple CEO Steve Jobs.  "We are focused on resolving these issues as quickly as possible."

### C.     The Individual Defendants' Breaches of Fiduciary Duties

48.     The Officer Defendants breached their fiduciary duties by:

  a.     colluding with the Compensation Committee Defendants to backdate stock option grants;

  b.     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

  c.     colluding with the other Individual defendants to produce and disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

49.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

50.    The Compensation Committee Defendants breached their fiduciary duties by:

a.    colluding with the Officer Defendants to backdate stock option grants;

b.    colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

c.    colluding with the other Individual Defendants to produce and disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

51.    The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

52.    The Audit Committee Defendants breached their fiduciary duties by:

a.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

b.    colluding with the other Individual Defendants to produce an disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

c.    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

17

53.    The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

54.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## V.    DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

55.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

56.    Plaintiff is an owner of Apple common stock and was an owner of Apple common stock at all times relevant hereto.

57.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

58.    As a result of the facts set forth herein, plaintiff has not made any demand on the Apple Board of Directors to institute this action against the Individual Defendants.   Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

59.    The Board currently consists of seven directors:    defendants Anderson, Campbell, Drexler, Jobs, Levinson, and York, and director Albert Gore, Jr.   The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

        a.    Jobs and Anderson, because they are directly interested in the improperly
               backdated stock option grants complained of herein;

18

PL.'S VERIFIED S'HOLDER DERIVATIVE COMPLAINT

b.   Campbell, Drexler, Levinson, and York, because as members of the Compensation Committee they directly participated in and approved the improper backdating of stock options, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Campbell, Drexler, Levinson, and York have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

c.   Campbell, Levinson, and York, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Campbell, Levinson and York have demonstrated that they are unable or unwilling to act independently of the Officer Defendants; and

d.   Anderson, Campbell, Drexler, Jobs, Levinson, and York, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Anderson, Campbell, Drexler, Jobs, Levinson and York have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

60.   Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

61.   Plaintiff incorporates by referenced all preceding and subsequent paragraphs as if set forth fully herein.

62.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

63.   As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

a.   colluding with the Compensation Committee Defendants to backdate stock option grants;

19

b.     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

c.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options; and

d.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

64.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

65.     As alleged in detail herein, the Compensation Committee Defendants breached their fiduciary duties by:

a.     colluding with the Officer Defendants to backdate stock option grants;

b.     colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

c.     colluding with the other Individual Defendants to produce and disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

66.     The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

67.     As alleged in detail herein, the Audit Committee Defendants breached their fiduciary duties by:

a.     colluding with the Officer Defendants to violate GAAP and Section 162(m);

20

b.  colluding with the other Individual Defendants to produce and disseminate to Apple shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

c.  colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

68.  The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

69.  As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
### EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

70.  Plaintiff incorporates by referenced all preceding and subsequent paragraphs as if set forth fully herein.

71.  Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

72.  The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Apple common stock.

73.  As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the

21

1  additional compensation expenses and tax liabilities the Company was required to incur and loss

2  of funds paid to the Company upon exercise of options.

3  **COUNT III**

4  **AGAINST THE OFFICER DEFENDANTS**
5  **FOR UNJUST ENRICHMENT**

6      74.    Plaintiff incorporates by referenced all preceding and subsequent paragraphs as if

7  set forth fully herein.

8
9      75.    The Officer Defendants were unjustly enriched by their receipt and retention of

10  backdated stock option grants, as alleged herein, and it would be unconscionable to allow them

11  to retain the benefits thereof.

12      76.    To remedy the Officer Defendants' unjust enrichment, this Honorable Court

13  should order them to disgorge to the Company all of the backdated stock options they received,

14  including the proceeds of any such options that have been exercised, sold, pledged, or otherwise

15  monetized.
16

17      **WHEREFORE,** Plaintiff demands judgment as follows:

18      A.    Against all of the Individual Defendants and in favor of the Company for
   the amount of damages sustained by the Company as a result of the
19  Individual Defendants' breaches of fiduciary duties and statutory
   violations;
20

21      B.    Ordering the Officer Defendants to disgorge to the Company all of the
   backdated stock options they received, including the proceeds of any such
22  options that have been exercised, sold, pledged, or otherwise monetized;

23      C.    Granting appropriate equitable relief to remedy Defendants' breaches of
24  fiduciary duties;

25      D.    Awarding to plaintiff the costs and disbursements of the action, including
   reasonable attorneys' fees, accountants' and experts' fees, costs, and
26  expenses; and

27      E.    Granting such other and further relief as the Court deems just and proper.
28

22

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury.

3

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

4

Pursuant to Civil Local Rule 3-16, the undersigned certify that as of this date, other than

5

the named parties, there is no such interest to report.

6

DATED:  July 24, 2006                                    Respectfully submitted,

7

BARRACK, RODOS & BACINE
STEPHEN R. BASSER

8

JOHN L. HAEUSSLER

9

10

_____
                STEPHEN R. BASSER

11

12

402 West Broadway, Suite 850
San Diego, CA  92101
Telephone:  (619) 230-0800

13

14

BARRACK, RODOS & BACINE
DANIEL E. BACINE

15

JEFFREY W. GOLAN
3300 Two Commerce Square
2001 Market Street

16

Philadelphia, PA 19103
Telephone:  (215) 963-0600

17

18

Attorneys for Plaintiff, Port Authority of
Allegheny County Retirement and Disability
Allowance Plan for Employees Represented

19

by Local 85 of the Amalgamated Transit
Union

20

21

22

23

24

25

26

27

28

23

## **VERIFICATION**

I, Patrick J. McMahon, hereby verify that I am a trustee of the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union ("the Fund") and am authorized to make this verification on its behalf; I have reviewed the Complaint and authorize its filing on behalf of the Fund; and that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: July 21, 2006

_____
Patrick J. McMahon

Shareholder Derivative Complaint
Case No. _____

25